UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Steve Nuest; Kaylyn Dalsted; Chad Walter; Kevin Vetsch; Lynelle Vetsch; Johnathan Quamme; Samantha Quamme; Nuest Farms, Inc. d/b/a Nuest Partnership; Walter Brothers Family Farms LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Thomas J. Vilsack, in his official capacity as Secretary of Agriculture; and Zach Ducheneaux, in his official capacity as Administrator of the Farm Service Agency,<br><br>Defendants. | Court File No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

For their complaint against Defendants, Plaintiffs allege as follows:

**INTRODUCTION**

1. A government "that wishes to employ a racial preference cannot rest on broad-brush assumptions of historical discrimination." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 485 (1989). Even "asserted interests in remedying societal discrimination . . . could not justify governmentally imposed racial discrimination." *Fisher v. University of Texas at Austin*, 570 U.S. 297, 318 (2013) (Thomas, J., concurring). If it were otherwise, as the Fourth Circuit in *J.A. Croson* worried, "governments will be free to adopt sweeping racial preferences at their pleasure, whether those preferences are legitimate remedial measures or bald dispensations of public funds and employment based on the politics of race." *J.A. Croson Co. v. City of Richmond*, 822 F.2d 1355, 1358 (4th

1

Cir. 1987), *aff'd,* 488 U.S. 469 (1989).

2. Resting on broad-brush assumptions of historical discrimination is exactly what the United States has done here. Despite strong precedent against race-based classifications, in March 2021, the United States retreated from the principle of equality under the law by enacting a race-based loan-forgiveness program in the American Rescue Plan Act of 2021 (ARPA). Among other things, under its Section 1005, ARPA provides billions of dollars of debt relief to "socially disadvantaged" farmers and ranchers. The phrase "socially disadvantaged" includes explicit racial classifications: to be eligible for ARPA's debt relief, farmers and ranchers must be Black or African American, American Indian or Alaskan native, Hispanic or Latino, or Asian American or Pacific Islander. Other farmers—white farmers, for example—are ineligible.

3. In enacting Section 1005 of the ARPA, Secretary Vilsack himself admitted that Section 1005 relies on broad, non-specific allegations of "systemic racism" which has allegedly "plague[d] the programs at the USDA, especially the Farm Loan Program." According to Secretary Vilsack, ARPA "provides funding to address longstanding racial equity issues within the Department and across agriculture." These broad-brush allegations do not support a blanket forgiveness of debt based purely on race.

4. Plaintiffs are farmers from Minnesota who have direct loans with the Farm Service Agency. They are otherwise eligible for the loan-forgiveness program in ARPA, except for the color of their skin. As white farmers, Plaintiffs are ineligible for this government benefit.

5. Defendants are responsible for running this race-based loan-forgiveness

program through the United States Department of Agriculture (USDA), Farm Service Agency (FSA). Defendants assert that the purpose of this program is to remedy "systemic racism" within USDA and more broadly "across agriculture."

6. The United States Constitution "forbids" discrimination by the federal government "against any citizen because of his race." *Adarand Constructors, Inc.*, 515 U.S. at 216 (citations omitted). Any classifications based on race, therefore, must "be subjected to the most rigid scrutiny." *Id* (citation omitted). So, when the government distributes "benefits on the basis of individual racial classifications," as Defendants do in this case, the government bears the burden of meeting "strict scrutiny." In other words, the government must prove that its discriminatory benefit is narrowly tailored and serves a compelling government interest. *Id.* at 227.

7. While Defendants' public statements about ARPA describe their generalized goal of ending "systemic racism," such broad goals do not override the constitutional ban on race discrimination. In fact, the Supreme Court has "rejected the interest in remedying societal discrimination because it had no logical stopping point." *Fisher*, 570 U.S. at 318 (Thomas, J., concurring).

8. In short, "[t]he way to stop discrimination on the basis of race is to stop discriminating on the basis of race." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007). Defendants' use of race discrimination as a tool to end "systemic racism," is therefore unconstitutional and should be enjoined by this Court.

## PARTIES

9.  Plaintiff Steve Nuest is an owner of Plaintiff Nuest Farms, Inc., d/b/a Nuest Partnership ("Nuest Partnership"). Mr. Nuest resides in Stevens County, Minnesota, where Nuest Partnership is also located. They have FSA Direct Loans with indebtedness outstanding. Mr. Nuest and Nuest Partnership would be eligible for the loan forgiveness program in Section 1005 of ARPA, except Mr. Nuest is white.

10. Plaintiff Kaylyn Dalsted owns Arrow D Ranch and lives in Pembina County, North Dakota. Ms. Dalsted has FSA Direct Loans with indebtedness outstanding. Ms. Dalsted would be eligible for the loan forgiveness program in Section 1005 of ARPA, except she is white.

11. Plaintiff Chad Walter is part owner and manager of Plaintiff Walter Brothers Family Farms LLC ("Walter Brothers"). Mr. Walter resides in Brown County, Minnesota, where Walter Brothers is also located. They have FSA Direct Loans with indebtedness outstanding. Mr. Walter and Walter Brothers would be eligible for the loan forgiveness program in Section 1005 of ARPA, except Mr. Walter is white.

12. Plaintiffs Kevin and Lynelle Vetsch reside in Todd County, Minnesota. They have FSA Direct Loans with indebtedness outstanding. Mr. and Mrs. Vetsch would be eligible for the loan forgiveness program in Section 1005 of ARPA, except they are white.

13. Plaintiffs Johnathan and Samantha Quamme reside in Roseau County, Minnesota. They have FSA Direct Loans with indebtedness outstanding. Mr. and Mrs. Quamme would be eligible for the loan forgiveness program in Section 1005 of ARPA, except they are white.

14. Defendant Thomas J. Vilsack is the Secretary of Agriculture. He is responsible for leading the USDA, which includes the FSA. Under Section 1005 of ARPA, Defendant Vilsack is required to provide debt relief to certain farmers based on race. He is sued in his official capacity.

15. Defendant Zach Ducheneaux is the Administrator of the FSA. Among other things, FSA oversees certain loan programs. Under Section 1005 of ARPA, FSA will provide debt relief to certain farmers with direct loans or USDA-back loans based on race. He is sued in his official capacity.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this complaint under 28 U.S.C. §§ 1331 and 2201 because this case presents a substantial question of federal law, specifically whether Section 1005 of ARPA—and Defendants' implementation of that section—violates the United States Constitution's guarantee of equal protection of the laws.

17. This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

18. Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1). A substantial part of the events giving rise to this claim occurred in this district, Defendants maintain one or more offices and employees in this district, a substantial part of the property subject to this action is situated in this district, and a plaintiff resides in this district.

## STATEMENT OF THE CLAIM

19. On March 11, 2021, the President of the United States signed ARPA into law.

20. Through Section 1005 of ARPA, Congress appropriated "such sums as may be necessary" to pay for the cost of loan modifications and payments for "each socially disadvantaged farmer or rancher as of January 1, 2021."

21. Section 1005(a) requires Defendant Vilsack to use the appropriated funds to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021."

22. A "socially disadvantaged farmer and rancher" has "indebtedness" if that farmer or rancher owes money on a "direct farm loan made by the Secretary" or a "farm loan guaranteed by the Secretary." *See* ARPA, Section 1005(a)(2).

23. Finally, Section 1005(a)(3) states that "the term 'socially disadvantaged farmer or rancher' has the meaning given in section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. 2279(a))." That Act explains that the term "socially disadvantaged group" "means a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(5) & (6).

24. Defendant Vilsack and Defendant Ducheneaux are responsible for the implementation of the loan forgiveness provisions in ARPA Section 1005.

25. On March 25, 2021, Defendant Vilsack offered written testimony to the House of Representatives Committee on Agriculture. Defendant Vilsack testified that

"systemic racism" has "plague[d] the programs at the USDA, especially the Farm Loan Program." According to Defendant Vilsack, ARPA "provides funding to address longstanding racial equity issues within the Department and across agriculture." This funding, according to Defendant Vilsack, will "respond to the cumulative impacts of systemic discrimination and barriers to access that have created a cycle of debt." Defendant Vilsack argued that prior efforts to remedy "specific, individualized discrimination" have "failed to do the necessary work" needed to address the "systemic discrimination [that] socially disadvantaged producers face."

26. In oral testimony, Defendant Vilsack stated that the purpose of ARPA's loan-forgiveness provisions was to respond to the "cumulative impact of discrimination over time" and not to address "specific acts of discrimination." Defendant Vilsack also testified that aid would be distributed "based on race and ethnicity."

27. Defendant Vilsack testified that between 13,000 and 15,000 loans would be forgiven, and USDA will disburse up to $4 billion in loan forgiveness to non-white farmers.

28. As for timing and process, Defendant Vilsack said that USDA would forgive loans by paying off the loan and then sending 20% of the value of the loan directly to farmers. Defendant Vilsack did not indicate that a farmer would need to take any affirmative step to obtain this benefit. Defendant Vilsack explained that some loans ("direct loans") could be forgiven quickly because USDA was the lender. He said these loans are "relatively simple and straightforward" and the loan will be "paid off [and] 20 percent goes to the farmer." Other loans ("guaranteed loans"), however, may take longer because USDA may have to work directly with banks to sort out issues like pre-payment penalties.

Defendant Vilsack testified that USDA has already started to reach out to banks, collect information, and has instructed them, by way of a letter dated March 25, 2021, to "take no further action whatsoever to enforce" the terms of USDA-guaranteed loans. Defendant Vilsack repeatedly testified that ARPA's loan forgiveness provisions would be implemented "as quickly as possible."

29.  On March 26, 2021, Defendant Ducheneaux authored a blog post detailing how FSA intends to implement Section 1005 of ARPA. *See* Zach Ducheneaux, "American Rescue Plan Socially Disadvantaged Farmer Debt Payments," (March 26, 2021).[1] According to this document, "USDA recognizes that socially disadvantaged farmers and ranchers have faced systemic discrimination with cumulative effects that have, among other consequences, led to a substantial loss in the number of socially disadvantaged producers, reduced the amount of farmland they control, and contributed to a cycle of debt that was exacerbated during the COVID-19 pandemic."

30.  Defendant Ducheneaux explained that through ARPA, FSA will provide "historic debt relief to socially disadvantaged producers including Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander."

31.  According to Defendant Ducheneaux, "[a]ny socially disadvantaged borrower with direct or guaranteed farm loans as well as Farm Storage Facility Loans qualifies." Defendant Ducheneaux defines "socially disadvantaged" borrowers as only

---

[1] Available at https://www.farmers.gov/connect/blog/loans-and-grants/american-rescue-plan-socially-disadvantaged-farmer-debt-payments.

8

those borrowers "with direct or guaranteed farm loans as well as Farm Storage Facility loans" and who are members of one or more of the following racial groups: "Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander."

32. On or about April 12, 2021, USDA updated its website to provide further information about the payments under Section 1005 of ARPA. The website confirms that only certain farmers will be eligible based on race: "Eligible borrowers include those who identify as one or more of the following: Black/African American, American Indian, Alaskan native, Hispanic/Latino, Asian American, or Pacific Islander."[2]

33. USDA also confirmed that eligible loans are those: "Made directly by FSA, including Farm Storage Facility Loans, Direct Farm Ownership Loans, Farm Operating Loans, including Microloans and Youth Loans, Emergency Loans, Conservation Loans, and Soil and Water Loans; and Guaranteed by FSA and made by an approved lender, including Farm Ownership Loans, Farm Operating Loans, and Conservation Loans."

34. Furthermore, on or about April 12, 2021, USDA updated its website entitled "American Rescue Plan Debt Payments FAQ."[3] Again, on this website, USDA confirms as follows: "The American Rescue Plan Act uses Section 2501 of the Food, Agriculture, Conservation, and Trade Act of 1990 as the definition of socially disadvantaged farmers and ranchers, which includes those who identify as one or more of the following: Black, American Indian/Alaska Native, Hispanic, Asian, and Hawaiian/Pacific Islander."

---

[2] Available at https://www.farmers.gov/americanrescueplan
[3] Available at https://www.farmers.gov/americanrescueplan/arp-faq

9

35.     Finally, USDA confirmed that "[n]o action on your part is needed right now" with regard to this loan-forgiveness program. In other words, Defendants will begin the process of forgiving loans automatically and there is no application process or other formal process required to trigger the payment of benefits on behalf of farmers. The FAQ website explains, "FSA is currently compiling and analyzing balances for all types of loans and is determining the quickest and most efficient way to make payments. Once the payment process has been finalized, all direct and guaranteed borrowers will receive a written notification from FSA explaining the payment process."

36.     To determine eligibility for the loan-forgiveness provision of Section 1005 of ARPA, Defendants will use data submitted by farmers on form AD-2047, despite the clear indication on this form that "[d]emographic information is used by USDA for statistical purposes only and will not be used to determine an applicant's eligibility for programs or services for which they apply."

37.     Defendants' form, AD-2047, also contains their admission that "the USDA, its Agencies, offices, and employees, and institutions participating in or administering USDA programs are prohibited from discriminating based on race, color, national origin, religion, sex, gender identity (including gender expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or reprisal or retaliation for prior civil rights activity, in any program or activity conducted or funded by USDA (not all bases apply to all programs)."

38.     Defendants are currently preparing to implement and will implement, absent preliminary and permanent injunctive relief to the contrary, Section 1005 of ARPA to

impose a race-based loan forgiveness program. Defendants' implementation includes the expenditure of federal funds, and Defendants could begin forgiving loans at any moment and may have already forgiven some loans.[4]

39. Plaintiffs are farmers who have FSA direct farm loans and are otherwise eligible for loan forgiveness under Section 1005 of ARPA.

40. But because Plaintiffs are white, they are ineligible for the loan forgiveness benefit under Section 1005 of ARPA as administered by Defendants.

41. Were Plaintiffs eligible for the loan forgiveness benefit, they would have the opportunity to make additional investments in their property, expand their farms, purchase equipment and supplies, and otherwise support their families and local communities. Because Plaintiffs are ineligible to even apply for the program solely due to their race, they have been denied the equal protection of the law and therefore suffered harm.

42. Plaintiff Steve Nuest would purchase strip-till equipment to reduce tillage, increase carbon sequestration, reduce soil erosion from wind, and reduce the use of fertilizer and chemicals. Mr. Nuest would also contribute to a community non-profit project building a community center that will house a daycare facility and gym space for local youth basketball.

43. Plaintiff Kaylyn Dalsted is in need of repairs on her cattle barn. The roof of her only shop is caving in, and because of a lack of doors the cold inhibits machinery in

---

[4] https://www.federalregister.gov/documents/2021/05/26/2021-11155/notice-of-funds-availability-american-rescue-plan-act-of-2021-section-1005-loan-payment-arpa ("Implementation will begin May 26, 2021").

the shop from working when needed. She would also buy standing panels, a better corral system, and generally invest in her livestock with the best feed and minerals they need. Ms. Dalsted is reliant on the charity of her neighbors to cut and bale all of her hay, and would consider buying new cutters and balers in order to be independent. Without loan forgiveness, Ms. Dalsted will struggle to keep her 3rd generation ranch going.

44. Plaintiff Chad Walter is in need of more space in his grain bin site. He would update his tractors and work on getting his next generation started on the family farm. In addition, he would continue to give charitable contributions to local organizations and fundraising events.

45. Plaintiffs Kevin and Lynelle Vetsch are first generation dairy farmers and want to transition the original stanchion barn on their property to a parlor and add an additional freestall to make things more user friendly and comfortable. The Vetsches hope to keep adding to their dairy by adding a maternity barn and better calf facilities. They also hope to purchase additional land in the future to support their dairy. By doing all that, they hope to open more employment opportunities for others in their area.

46. Plaintiffs Johnathan and Samantha Quamme would benefit from forgiveness because it would enable them to attempt no-till, cover crop, and organic farming. They would repair equipment in need of repair to help make planting and harvesting more efficient. They would also consider some conservation programs. Without their FSA debts, they would spend more time with family and help other farmers in the area.

## CAUSE OF ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF
## EQUAL PROTECTION VIOLATION

47. Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

48. The Constitution forbids "discrimination by the general government . . . against any citizen because of his race." *Gibson v. State of Mississippi*, 162 U.S. 565, 591 (1896). "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

49. "[A]ll racial classifications imposed by government must be analyzed by a reviewing court under strict scrutiny." *Johnson v. California*, 543 U.S. 499, 505 (2005) (citation omitted). "Under strict scrutiny, the government has the burden of proving that racial classifications are narrowly tailored measures that further compelling governmental interests." *Id*. (citation omitted).

50. Section 1005 of ARPA imposes racial classifications. Farmers or ranchers with direct farm loans, guaranteed farm loans, or Farm Storage Facility Loans qualify for loan forgiveness only if they are members of one of the following racial groups: Black/African American, American Indian or Alaskan native, Hispanic or Latino, or Asian American or Pacific Islander.

51. Defendants are responsible for interpreting and implementing Section 1005 of ARPA.

52. Although Plaintiffs are farmers with direct FSA loans, and otherwise eligible for the loan forgiveness program under Section 1005 of ARPA, they are ineligible for this federal benefit because they are white.

53. Plaintiffs are harmed by the Defendants' racial classifications because if Plaintiffs were not white, they would be receiving 120% of the value of their outstanding debt and they would use that money to benefit their farm, family, and local community.

54. The racial classifications under Section 1005 of ARPA are unconstitutional because they violate the Equal Protection guarantee in the United States Constitution.

55. The racial classifications under Section 1005 of ARPA are not narrowly tailored to serve a compelling government interest.

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court:

A. Enter a temporary and preliminary injunction preventing Defendants from applying racial classifications when determining eligibility for loan modifications and payments under Section 1005 of ARPA.

B. Enter a declaratory judgment that the racial classifications under Section 1005 of ARPA are unconstitutional.

C. Enter an order permanently enjoining Defendants from applying racial classifications when determining eligibility for loan modifications and payments under Section 1005 of ARPA.

D. Award attorney fees in favor of Plaintiffs and against Defendants upon Plaintiffs prevailing in this litigation, pursuant to 42 U.S.C. § 1988;

14

    E.    Award costs in favor of Plaintiffs and against Defendants upon Plaintiffs prevailing in this litigation

    F.    Grant Plaintiffs such other and further relief as the court deems appropriate.

Respectfully submitted,

Dated: July 7, 2021                      */s/ James V. F. Dickey*

                                          **UPPER MIDWEST LAW CENTER**
                                          Douglas P. Seaton (#127759)
                                          James V. F. Dickey (#393613)
                                          8421 Wayzata Blvd., Suite 105
                                          Golden Valley, Minnesota 55426
                                          Doug.Seaton@umwlc.org
                                          James.Dickey@umwlc.org
                                          (612) 428-7000

                                          *Attorneys for Plaintiffs*